IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KIMBERLY KING, Individually and as Personal Representative of the Estate of JUSTIN KING, Deceased, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>PRATT & WHITNEY CANADA CORPORATION, HONEYWELL INTERNATIONAL, INC., HONEYWELL AEROSPACE, WOODWARD, INC., and BENDIX CORPORATION,<br><br>    Defendants. | Civil Action No. 20-359-LPS-CJB |

## **REPORT AND RECOMMENDATION**

Presently pending in this products liability action are Defendants Honeywell International Inc. ("Honeywell") and Woodward Inc.'s ("Woodward") motion to dismiss (the "Honeywell and Woodward Motion"), (D.I. 16), and Defendant Pratt & Whitney Canada Corporation's ("Pratt" and collectively with Honeywell and Woodward, "Defendants") motion to dismiss (the "Pratt Motion" and collectively with the Honeywell and Woodward Motion, the "Motions"), (D.I. 20). For the reasons set forth below, the Court recommends that the Honeywell and Woodward Motion be GRANTED and that the Pratt Motion be GRANTED.

**I.     BACKGROUND**

    **A.     Factual Background**

        **1.     The Parties**

This case relates to a June 2017 airplane crash in which Justin King and his 13-year-old son H.K. lost their lives.

Plaintiffs are the surviving family and estate representatives of the two decedents. Plaintiff Kimberly King, a resident of New Mexico, is the surviving wife of Justin King and mother of H.K. (D.I. 3 at ¶¶ 1-2) Kimberly King is also the personal representative of the estate of both decedents. (*Id.*) Plaintiff Arthur Bustos, also a New Mexico resident, was appointed as the personal representative "for the Purposes of Wrongful Death of the Estates of Justin King and H.K." (*Id.* at ¶ 3) Finally, Plaintiff Damon Richards is the guardian *ad litem* who was appointed on behalf of A.K. and K.K., nonparties to this suit; A.K. and K.K. are the two surviving children of Kimberly King and Justin King. (*Id.* at ¶ 4)

Defendants in this case are all alleged to be responsible for defects in the aircraft's engine or certain other related components, as is further set out below. Defendant Honeywell is a Delaware corporation with its principal place of business in Morristown, New Jersey. (*Id.* at ¶ 5) Defendant Pratt is a Delaware corporation with principal places of business in Québec, Canada and in Connecticut. (*Id.* at ¶ 13) Defendant Woodward is a Delaware corporation that has its principal place of business in Fort Collins, Colorado. (*Id.* at ¶ 15)[1]

2. **Events Relating to the Crash**

On June 13, 2017, Justin King was piloting a Beechcraft King Air E90 aircraft (the "accident aircraft") on a planned trip from Ruidoso, New Mexico to Abilene, Texas; he and H.K. were the only two passengers in the accident aircraft. (*Id.* at ¶¶ 20-21, 24, 26, 30) Shortly after takeoff in New Mexico, the accident aircraft is alleged to have become uncontrollable due to "an asymmetrical power condition." (*Id.* at ¶ 27) Justin King attempted to make an emergency

---

[1]     There are two non-moving Defendants: Honeywell Aerospace, a Delaware corporation with a principal place of business in Phoenix, Arizona, and Bendix Corporation, a Delaware corporation with its principal place of business in South Bend, Indiana. (D.I. 3 at ¶¶ 6-7) The Honeywell and Woodward Motion asserts that Defendant Honeywell International Inc. is "improperly named as Honeywell Aerospace and Bendix Corporation[.]" (D.I. 16 at 1)

landing, but the plane ultimately crashed near the takeoff runway and burst into flames, killing both occupants. (*Id.* at ¶¶ 25, 29)

The accident aircraft was a "twin engine turboprop aircraft" that Justin King had purchased on behalf of his company, King Industries. (*Id.* at ¶¶ 30, 39) The accident aircraft was equipped with two PT6A-28 engines, which in turn were equipped with fuel control units ("FCU") and propeller governors ("governors"). (*Id.* at ¶¶ 31-32) Pratt is alleged to have manufactured the two PT6A-28 engines. (*Id.* at ¶¶ 13, 31) Honeywell, Honeywell Aerospace and Bendix Corporation (collectively, the "Honeywell Defendants") are alleged to have designed, manufactured, tested, supplied and sold the FCUs. (*Id.* at ¶¶ 9, 34) Woodward is alleged to have manufactured and supplied the governors. (*Id.* at ¶ 31)

Plaintiffs' first Amended Complaint ("FAC"), which is the operative complaint, does not *expressly* state what it is that Plaintiffs believe caused the crash of the accident aircraft. But the FAC does assert that "the Honeywell, Pratt and Woodward defendants knew that any interruption of the free flow of pneumatic pressure, as generated in the engine, metered in the fuel control, and supplied to the governor would result in a sudden and unannounced loss of engine power and uncommanded propeller pitch." (*Id.* at ¶ 35) The FAC then alleges that the accident aircraft had "undergone directed and routine compressor washes, which presented the pneumatic system with debris and dirt which did impede the function of the pneumatic systems, including the governor and FCU[.]" (*Id.* at ¶ 37) And it states that if "the dirt liberated in those washes enters the pneumatic system and is not adequately filtered out of pneumatic air, it will affect the engine's function by contaminating the fuel control and governor." (*Id.* at ¶ 38) Additionally, the FAC alleges that "contaminants and loose metal" were "found in the right governor [of the accident aircraft] during investigation" and that "Defendant Woodward [] knew

3

the dangers of contaminants and loose metal in interfering with the free movement of the internal parts of the governor[.]" (*Id.* at ¶ 36)[2]

Additional relevant facts will be provided below in Section III.

### B. Procedural History

On March 13, 2020, Plaintiffs filed their initial Complaint against all of the current Defendants, as well as against Pratt & Whitney Engine Services, Inc. and United Technologies Corporation. (D.I. 1) Plaintiffs then filed the FAC on May 26, 2020. (D.I. 3) On July 15, 2020, Pratt & Whitney Engine Services, Inc. and United Technologies Corporation were dismissed from this suit by stipulation. (Docket Item, July 15, 2020)

Honeywell and Woodward filed their motion to dismiss on July 22, 2020, (D.I. 16), and Pratt filed its motion to dismiss on July 29, 2020, (D.I. 20). The Honeywell and Woodward Motion was fully briefed as of August 12, 2020, (D.I. 24), and the Pratt Motion was fully briefed as of August 19, 2020, (D.I. 25). Thereafter, on December 3, 2020, Chief United States District Judge Leonard P. Stark referred this case to the Court to hear and resolve all pretrial matters, up to and including the resolution of case dispositive and *Daubert* motions. (D.I. 28)

## II. STANDARD OF REVIEW

The sufficiency of pleadings for non-fraud claims is governed by Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A claim alleging fraud or mistake, however, is subject to the more stringent pleading requirements of Federal Rule of Civil Procedure 9(b),

---

[2] From Plaintiffs' answering briefs, it appears that Plaintiffs do, in fact, think that (at a minimum) the accident "resulted" from debris and dirt that were generated by routine compressor washes—debris and dirt that thereafter entered the accident aircraft's pneumatic system, and that allegedly affected the engine's function by contaminating the FCUs and governors. (D.I. 22 at 2-3; D.I. 23 at 2-3)

which mandates that the "circumstances constituting fraud or mistake" be "state[d] with particularity[.]"  Fed. R. Civ. P. 9(b); *see also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, like the Motions at issue here, a court conducts a two-part analysis.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions."  *Id.* at 210–11; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] court must accept as true all of the allegations contained in a complaint . . . [, but] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).  In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Id.* at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

### III. DISCUSSION

The FAC includes 14 different counts; among those are three counts that bring claims of negligent misrepresentation (the "negligent misrepresentation claims").  (D.I. 3)  Count IV is a claim for negligent misrepresentation against Pratt, (*id.* at ¶¶ 85-95),[3] Count VIII is a claim for

---

[3]  The FAC actually contains two counts labelled as "Count IV":  the negligent misrepresentation claim against Pratt, (D.I. 3 at ¶¶ 85-95); and a strict liability claim against Woodward, (*id.* at ¶¶ 135-44).  The latter is pretty clearly just a mistake and is meant to be labeled as "Count IX," in light of where it falls in the FAC.  The Court will consider that claim to

negligent misrepresentation against the Honeywell Defendants, (*id.* at ¶¶ 124-34), and Count XII is a claim for negligent misrepresentation against Woodward, (*id.* at ¶¶ 161-71). With their Motions, Defendants seek dismissal only of the negligent misrepresentation claims. (D.I. 16 at 2; D.I. 21 at 1)

Below, the Court will first set out the relevant pleading standard at issue. Thereafter, it will assess whether the FAC's allegations meet or exceed the relevant pleading bar.

### A. The Relevant Pleading Standard

Under Delaware law, which the parties agree applies here, in order to plead a claim for negligent misrepresentation, Plaintiffs must sufficiently allege that: (1) "the defendant had a pecuniary duty to provide accurate information"; (2) "the defendant supplied false information"; (3) "the defendant failed to exercise reasonable care in obtaining or communicating the information"; and (4) "the plaintiff suffered a pecuniary loss caused by justifiable reliance upon the false information." *Steinman v. Levine*, No. Civ.A. 19107, 2002 WL 31761252, at *15 (Del. Ch. Nov. 27, 2002), *aff'd*, 822 A.2d 397 (Del. 2003); *see PR Acquisitions, LLC v. Midland Fund. LLC*, C.A. No. 2017-0465-TMR, 2018 WL 2041521, at *13 & n.133 (Del. Ch. Apr. 30, 2018). "'A claim of negligent misrepresentation, or equitable fraud, requires proof of all the elements of common law fraud except that plaintiff need not demonstrate that the misstatement or omission was made knowingly or recklessly.'" *PR Acquisitions*, 2018 WL 2041521, at *13 & n.134 (quoting *Fortis Advisors LLC v. Dialog Semiconductor PLC*, C.A. No. 9522-CB, 2015 WL 401371, at *9 (Del. Ch. Jan. 30, 2015)).

---

be "Count IX" and so when the Court refers to Count IV, it is referring to the negligent misrepresentation claim against Pratt.

Although pleading fraud (e.g., the making of knowingly false statements) is thus not *required* in order to make out a negligent misrepresentation claim, if such a claim is *actually pleaded* in a manner that nevertheless "sounds in fraud[,]" then the claim has to meet Rule 9(b)'s requirements. *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85-86 & n.3 (3d Cir. 2015) (affirming the district court's application of Rule 9(b) to a negligent misrepresentation claims that "sounds in fraud"); *see also Cavi v. Evolving Sys. NC, Inc.*, Civil Action No. 15-1211-RGA, 2018 WL 2372673, at *2 (D. Del. May 24, 2018). Here, Counts IV, VIII and XII do "sound in fraud." After all, in those very counts, the FAC alleges that: (1) Defendants designed, made, maintained and marketed the relevant engine/FCUs/propellers as if they were "safe for flight when in fact they were not"; (2) Defendants made misrepresentations and omissions about the safety of those products—misrepresentations that Defendants not only "ought to have known" were false, but that were made despite Defendants' "actual knowledge" of the unreasonably dangerous nature of those products and due to Defendants' "willful[]" failure to disclose the relevant dangers; and (3) Defendants were thus guilty of having committed "fraud[.]" (D.I. 3 at ¶¶ 85-95, 124-34, 161-71 (emphasis added)) When a plaintiff actually alleges that a defendant committed "fraud" in a particular count in the operative complaint, then it is hard not to conclude that such a count sounds in fraud. *See Keystone Assocs. LLC v. Barclays Bank PLC*, C.A. No. 19-796 (MN), 2020 WL 109008, at *2 & n.2 (D. Del. Jan. 9, 2020) (concluding that plaintiffs' negligent misrepresentation claim sounded in fraud and was subject to Rule 9(b), where "[p]laintiffs specifically incorporate[d] all of their fraud allegations into their claim for negligent misrepresentation"); *cf. Cavi*, 2018 WL 2372673, at *2 (concluding that a defendant's negligent misrepresentation counterclaim sounded in fraud, where the claim was based on plaintiff having allegedly submitted a false commission statement).

7

Therefore, Plaintiffs were required to plead the negligent misrepresentation claims in a manner that satisfies Rule 9(b). To do so, they "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200 (citation omitted). Plaintiffs must also allege "who made a misrepresentation to whom and the general content of the misrepresentation[.]" *Cavi*, 2018 WL 2372673, at *2 (internal quotation marks and citation omitted); *see also Kuhn Const. Co. v. Diamond State Port Corp.*, Civ. No. 10-637-SLR, 2011 WL 1576691, at *9 (D. Del. Apr. 26, 2011).

**B.     Did Plaintiffs Plead the Relevant Counts with Particularity?**

Having determined that Rule 9(b) applies, the Court now turns to the substance of the Motions.[4] As was noted above, one of the elements of a negligent misrepresentation claim is that the defendant supplied false information. *See Coleman v. PricewaterhouseCoopers LLC*, No. C.A. 03C-02-137 RRC, 2005 WL 1952844, at *3 (Del. Super. Ct. July 29, 2005) ("[A] plaintiff cannot sustain a claim of negligent misrepresentation when it has failed to produce any evidence that the defendant [. . .] supplied false information" as "[a]ll of the other elements of an action for negligently supplied information flow from this [] element.") (internal quotation marks and citation omitted). In the counts at issue, Plaintiffs do baldly allege that the Defendants made "misrepresentations [and omissions]" that caused Plaintiffs harm. (D.I. 3 at ¶¶ 88, 127, 164) That then begs the question: What statements are Plaintiffs referring to? Here the counts say only a little more. They further assert that Defendants "did represent that their [relevant

---

[4]     Because the Court will analyze Plaintiffs' claims for negligent misrepresentation under the heightened requirements of Rule 9(b), it will not address Defendants' alternative arguments for dismissal pursuant to Rule 8(a). (*See* D.I. 16 at 7-8; D.I. 21 at 6-7).

8

products] were safe for use and non-defective, when they ought to have known the falsity of that representation" and that Defendants "did also fail to disclose the high probability that a dangerous condition would develop in the [relevant products], particularly through the failure of one or several components including but not limited to [certain relevant product components]." (*Id*. at ¶¶ 86-87, 125-26, 162-63)

But who made these statements that amounted to misrepresentations or that included such omissions? When, where and to whom were those statements made? What exactly about the statements was false? Or what exactly was omitted from the statements that made them false? The FAC does not say. (D.I. 16 at 4, 6; D.I. 21 at 4-5)[5] This amounts to a failure to plead with

---

[5] Plaintiffs' answering briefs do not provide much help in answering these questions. In those briefs, Plaintiffs generically point to large swaths of paragraphs in the FAC and suggest, without any real effort at specificity, that the content of those paragraphs somehow meets Rule 9(b)'s requirements. (D.I. 22 at 11 (citing D.I. 3 at ¶¶ 31-47, 125-33, 162-70); D.I. 23 at 10 (citing D.I. 3 at ¶¶ 31-47, 86-95))

The Court acknowledges that in paragraphs 42-44 of the FAC, Plaintiffs make some other (vague) allegations about "representations" or "misrepresentations" purportedly made by Defendants. For example, Plaintiffs attach to the FAC certain "logbooks for the accident aircraft" that are alleged to be "evidence of the representations and contracts . . . between the defendants and [Plaintiffs]." (D.I. 3 at ¶ 42) However, the attached logbooks are 77 pages long, and neither in the FAC nor in their briefing do Plaintiffs ever explain: (1) whether any portion of these logbooks amount to misrepresentations made by Defendants regarding the engines/FCUs/propellers at issue; and (2) if so, why. (*Id.*, ex. A; *see also* D.I. 16 at 6-7; D.I. 21 at 5; D.I. 22; D.I. 23); *cf. Lima Delta Co. v. Gulfstream Aerospace Corp.*, C.A. No. N14C-02-042 MMJ, 2019 WL 624589, at *3 (Del. Super. Ct. Feb. 13, 2019). Similarly, Plaintiffs allege that "[w]ith respect to the Type Certificate and/or Production Certificate[,] . . . Defendants knowingly misrepresented to the [Federal Aviation Administration, or "FAA"], or concealed or withheld from the FAA, required information that is and was material and relevant to the certification, performance, maintenance, operation, airworthiness and/or continued airworthiness of the accident aircraft [and its components]" and that this "misrepresentation, concealing and/or withholding of information consisted of failing to notify the FAA and other regulatory authorities of the extent and seriousness of the defects in the accident engine assemblies and accessories . . . and also consisted of improper certification and continued certification of the accident aircraft and accident engine assembly [and its components]." (*Id.* at ¶¶ 43-44) Candidly, the Court is not sure (and the FAC does not explain) what a Type Certificate or a Production Certificate is. Nor does the FAC plead with the required specificity what it was

9

particularity pursuant to Rule 9(b). *See, e.g.*, *Cavi*, 2018 WL 2372673, at *3 (concluding that a negligent misrepresentation counterclaim did not meet the pleading requirements of Rule 9(b), where the pleadings did not "provide the general content of the misrepresentations"); *S. Track & Pump, Inc. v. Terex Corp.*, 623 F. Supp. 2d 558, 567 (D. Del. 2009) (finding that a plaintiff had not sufficiently pleaded a negligent misrepresentation claim pursuant to Rule 9(b), where the relevant complaint identified "few, if any details, regarding the content, manner, and circumstances of the alleged fraud" and "fail[ed] to identify a single individual who was involved in the alleged fraud").

The Court thus recommends that Counts IV, VIII and XII be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, the Court recommends that both Motions be GRANTED and that Counts IV, VIII and XII be DISMISSED.

Because it is not clear to the Court that allowing the opportunity to amend would be a futile act, because this is the first time the Court has found Plaintiffs' claims to be deficiently pleaded, and because leave to amend should be given freely "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), the Court also recommends that dismissal of the claims be without prejudice, and that, to the extent that the District Court affirms the Court's recommendation, Plaintiffs be given leave to file a further amended complaint within 14 days that attempts to address the deficiencies outlined above. *TriDiNetworks Ltd. v. Signify N. Am. Corp.*, Civil Action No. 19-1063-CFC-CJB, 2020 WL 2839224, at *5 (D. Del. June 1, 2020).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

---

about Defendants' statements regarding such certificates that could have amounted to negligent misrepresentations.

10

Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

      The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  February 19, 2021                              *Christopher J. Burke*
                                                            Christopher J. Burke
                                                            UNITED STATES MAGISTRATE JUDGE